IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TIMMY STEVENS,

      Petitioner,

    v.

WARDEN, PICKAWAY
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:16-cv-901
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, Respondent's *Return of Writ*, Petitioner's *Reply,* and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> On June 12, 2012, appellant got into an argument with John Davis. The dispute escalated into a physical altercation involving firearms. Appellant ultimately fired three gunshots into a car where Davis was sitting, fatally striking him once in the skull. Another shot ricocheted within the interior of the car and wounded a small child who was inside the vehicle.
>
> Appellant was thereafter indicted by the Morgan County Grand Jury, and the matter proceeded to a jury trial on July 8 through July 10, 2013, following which appellant was convicted of murder, with a firearm specification; felonious assault, with a firearm specification; tampering with evidence; theft of an automobile; abuse of a corpse; and having weapons under a disability. Appellant was also found to be a repeat violent offender.

The trial court imposed an indefinite term of incarceration of 15 years to life for the murder conviction, with a three year mandatory term for the firearm specification and a ten year definite term for the repeat violent offender specification. For the felonious assault conviction, the trial court imposed an eight year term of incarceration, with a definite term of three years for the firearm specification and an eight year definite term for the repeat violent offender specification. The trial court ordered the sentence for murder and the specifications thereto to run consecutive to the sentence for felonious assault and the specifications thereto. The trial court also imposed a definite term of 36 months for having weapons under disability, a definite term of 36 months for tampering with evidence, a definite term of 12 months for abuse of a corpse, with the sentences to run concurrently.

On July 23, 2013, appellant filed a motion for new trial in the trial court. He therein asserted that one of the jurors, Noah Matthews, during voir dire questioning had failed to disclose the fact of his sister's 2009 rape and murder. Attached to the motion for new trial, Attorney Gregory W. Meyers (appellant's trial counsel) submitted an affidavit averring that he had received this information after the jurors reached a guilty verdict. Attorney Meyers further averred that had he known Noah Matthews suffered this tragedy in his family, he would have moved to excuse the juror for cause and, failing that, would have removed him by way of peremptory challenge. The motion further included a copy of the obituary for Matthews' sister, Abi Shalom Matthews.

The trial court implicitly denied the motion for a new trial without conducting an evidentiary hearing.

Appellant then filed a direct appeal, assigning as error the trial court's denial of a new trial and failure to merge the charges of murder and felonious assault for sentencing. On April 17, 2014, this Court issued a decision affirming the trial court on the issue of merger, but reversing in part on the issue of the denial of a new trial.

*See State v. Stevens*, 5th Dist. Morgan No. 13AP0003, 2014–Ohio–1703 ["Stevens I"]. Specifically, we stated as follows:

"We find * * * the juror's failure to respond during voir dire to the question presented by defense counsel despite his family history warrants a hearing to determine whether the juror's failure to respond materially prejudiced Appellant's substantial rights. We note Appellant must demonstrate an accurate response would have

2

provided a valid basis for a for-cause challenge. We interpret such as not merely providing a basis to challenge, but further to demonstrate the for-cause challenge would have been successful, despite any rehabilitation of the juror. Accordingly, we remand the matter to the trial court for further proceedings in accordance with the law and this opinion."

*Id*. at ¶ 38.

Upon remand the trial court duly conducted a hearing on June 17, 2014 on appellant's new trial motion. Present at the hearing were Prosecuting Attorney Mark Howdyshell, Assistant Attorney General Paul Scarsella, and Attorney Peter Cultice (on behalf of Appellant Stevens, who was also present). Juror Noah Matthews was sworn as a witness and questioned on direct and cross-examination. Via a judgment entry filed July 11, 2014, the trial court again denied the motion for new trial, finding inter alia " * * * there is no basis for a for cause challenge and that any nondisclosure of material information by Noah Matthews did not prejudice the Defendant in any manner." Judgment Entry at 2.

On July 29, 2014, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

"I. THE TRIAL COURT ERRED BY NOT GRANTING A NEW TRIAL TO DEFENDANT IN LIGHT OF THE FACT THAT A JUROR DELIBERATELY CONCEALED INFORMATION FROM DEFENSE COUNSEL DURING VOIR DIRE WHICH INFORMATION, IF REVEALED, WOULD HAVE HAD THE JUROR EXCUSED 'FOR CAUSE.'"

*State v. Stevens,* No. 14AP-0005, 2015 WL 404693, at *1-2 (Ohio App. 5th Dist. Jan. 28, 2015).

On January 28, 2015, the appellate court affirmed the judgment of the trial court. *Id*. On June 24, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Stevens*, 142 Ohio St.3d 1519 (Ohio 2015).[1]

---

[1] Petitioner also filed an application to reopen his appeals pursuant to Ohio Appellate Rule 26(B). (Doc. 8-1, PageID# 307.) On July 24, 2015, and November 19, 2015, the appellate court denied the Rule 26(B) applications. (PageID# 379, 384.) Petitioner did not pursue an appeal to the Ohio Supreme Court. *See Petition* (Doc. 1, PageID# 8.) However, these actions are not relevant here.

3

On September 20, 2016, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As his sole claim for relief, Petitioner asserts that he was denied a fair trial due to the seating on the jury of Noah Matthews, who failed to disclose during *voir dire* that his sister had been murdered by the Petitioner's cousin. It is the position of the Respondent that this claim fails to provide a basis for relief.

**Standard of Review**

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1)

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir.) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub nom. Coley v. Robinson*, 134 S. Ct. 513 (2013). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id*. at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

**Merits**

Petitioner asserts that he was denied a fair and impartial jury because Matthews failed to disclose during *voir dire* that his sister had been murdered. The state appellate court rejected this claim as follows:

> The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a defendant accused of a state criminal violation shall be tried before a panel of fair and impartial jurors. *State v. Johnson*, 5th Dist. Stark No.2011–CA–237, 2012–Ohio–3227, ¶ 24 (citations omitted). See, also, Ohio Constitution, Article I, Section 10. Crim.R. 33(A)(2) provides as follows: "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * * Misconduct of the jury, prosecuting attorney, or the witnesses for the state."
>
> The granting of a new trial lies in the trial court's sound discretion. *State v. Swanson*, 5th Dist. Ashland No. 02COA048, 2003–Ohio–16, ¶ 7, citing *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
>
> In *Grundy v. Dhillon*, 120 Ohio St.3d 415, 164, 900 N.E.2d 153, 2008–Ohio–6324, the Ohio Supreme Court concluded as follows:
>
> " * * * [W]e hold that to obtain a new trial in a case in which a juror has not disclosed information during voir dire, the moving party must first demonstrate that a juror failed to answer honestly a material question on voir dire and that the moving party was prejudiced by the presence on the trial jury of a juror who failed to disclose material information. To demonstrate prejudice, the moving party must show that an accurate response from the juror would have provided a valid basis for a for-cause challenge. We also hold that in determining whether a juror failed to answer honestly a material question on voir dire and whether that nondisclosure provided a basis for a for-cause challenge, an

appellate court may not substitute its judgment for the trial court's judgment unless it appears that the trial court's attitude was unreasonable, arbitrary, or unconscionable."FN1

FN1: We recognize that *Grundy* was a civil case and thus entailed Civ.R. 59. However, as in *Stevens I,* we find its rationale applicable to the circumstances presented herein.

In the case *sub judice*, the following exchange took place at the June 17, 2014 hearing, following remand:

"Q. [APPELLANT'S COUNSEL] When Mr. Meyers, who was defending, was the defense counsel at this trial for Mr. Stevens, he had asked the question, how about family and friends? Who's had a person you would call, whether friend, family, now or formerly, good friend, that was a victim of a violent offense? But you didn't raise your hand or say anything at that time. Is there any particular reason why you didn't speak up?

"A. [MATTHEWS] I'm not I'm not biased. I mean, what happened in the past, happened in the past.

"Q. Okay. But even though the question was asked about how family and friends—how about family and friends, who's had a person you call, whether friend, family, now or formerly, good friend, that was a victim of a violent offense, you decided not to raise your hand?

"A. I guess.

"Q. You understood the question that was asked; is that correct?

"A. Yeah.

"Q. And you just decided not to answer it?

"A. Yeah."

Tr. at 35.

Matthews also responded as follows, concerning the trial judge's own admonition and *voir dire* questioning:

"Q. [APPELLANT'S COUNSEL] Okay. Do you know why you didn't answer the [trial judge's] question?

"A. [MATTHEWS] No. I think it was just where they were just asking anyone who wanted to answer it, answer it.

"Q. Okay. So you thought it was just voluntary, and you just didn't answer it?

"A. Umhuh.

"Q. I'm sorry. You've got—

"A. Yes, sir."

Tr. at 42.

Appellant presently maintains that the hearing shows Matthews had made a "conscious decision" to fail to respond to the pertinent *voir dire* questions and admonitions at appellant's trial. However, we reiterate that our prior remand instructed the trial court to consider whether appellant could demonstrate that "the for-cause challenge would have been successful, despite any rehabilitation of the juror." *See Stevens I* at ¶ 38. We note Matthews responded during cross-examination at the June 17, 2014 hearing that his sister's murder had not affected his thought process in any way during his service as a juror. Tr. at 45. Certainly, "[a] court may infer bias if it finds deliberate concealment * * *." *State v. Williams*, 79 Ohio St.3d 1, 4 (1997) (emphases altered). But this rule of law again demands that an appellate court allow the trial court to exercise wide discretion in assessing a juror's conduct in this realm. Notably, "[a] prospective juror is not automatically disqualified by the fact that a close relative has been the victim of a crime similar to the crime on trial." *State v. Murphy*, 91 Ohio St.3d 516, 525, 747 N.E.2d 765, 783 (2001) (additional citations omitted).

Furthermore, in this instance, the trial court judge was the same for the trial, for the post-trial motion for a new trial, and for the hearing on the motion pursuant to our remand. As we noted in a slightly different context in *State v. Davis*, 5th Dist. Ashland No. 02 COA 9, 2002–Ohio–5286, "the acumen gained by the trial judge who presided during the entire course of these proceedings makes him well qualified to rule on the motion for a new trial * * *." *Id*. at ¶ 21, quoting *U.S. v. Curry* (C.A.5, 1974), 497 F.2d 99, 101.FN2

> FN2: *Davis* entailed a motion for new trial, denied without a hearing, based on affidavits concerning the discovery of evidence of witness recantation (Crim.R.33(A)(6)).
>
> Upon review of the record before us, we are unpersuaded that the trial court's denial of appellant's new trial motion following a hearing constituted an abuse of discretion under the circumstances presented.

*State v. Stevens*, 2015 WL 404693, at *2-4.

The Sixth Amendment guarantees a criminal defendant the right to an impartial jury. *See Morgan v. Illinois*, 504 U.S. 719, 726 (1992) (citing *Turner v. Louisiana,* 379 U.S. 466 (1965); *Irvin v. Dowd*, 366 U.S. 717 (1961)). That is, a jury which is "capable and willing to decide the case solely on the evidence" presented. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 218 (1982). Moreover, "[t]he presence of even a single biased juror deprives a defendant of his right to an impartial jury." *Hanna v. Ishee*, 694 F.3d 596, 616 (6th Cir. 2012) (citing *Williams v. Bagley*, 380 F.3d 932, 944 (6th Cir. 2004), *cert. denied sub nom. Williams v. Bradshaw*, 544 U.S. 1003 (2005)), *cert. denied sub nom. Hanna v. Robinson*, 134 S. Ct. 101 (2013). However,

> [t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd*, 366 U.S. at 723.

*Voir dire* is designed to protect a criminal defendant's right to an impartial jury by exposing possible biases on the part of potential jurors. *Dennis v. Mitchell,* 354 F.3d 511, 520

(6th Cir. 2003) (citing *McDonough Power Equip.*, 464 U.S. at 554), *cert. denied*, 541 U.S. 1068 (2004). In order to obtain a new trial where a juror fails to respond to a question during *voir dire*, the Petitioner must show "that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556. *See Johnson v. Luoma*, 425 F.3d 318, 325 (6th Cir. 2005) (citing *McDonough*, 464 U.S. at 556), *cert. denied*, 549 U.S. 832 (2006). "If a juror is found to have deliberately concealed material information, bias *may* be inferred[; i]f, however, information is not concealed deliberately, the movant must show *actual bias*." *Williams v. Bagley*, 380 F.3d at 946 (*quoting Zerka v. Green*, 49 F.3d 1181, 1186 (6th Cir. 1995) (emphasis in original).

The Supreme Court explained, "[t]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough*, 464 U.S. at 556. Thus, "the proper standard for determining when a prospective juror may be excused for cause . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988) (quoting *Witt*, 469 U.S. at 424). "As the Court explained in *Witt*, a juror may be excused for cause 'where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.'" *White v. Wheeler*, 136 S.Ct. 456, 460 (2015) (citing *Wainwright v. Witt*, 469 U.S., at 425–426).

> Pursuant to the Sixth Amendment, for a finding of juror impartiality when a juror is challenged for cause, the relevant question is "did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d

> 847 (1984). A qualified juror need not be "totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). Rather, " '[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' " Id. (quoting *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)).

*Miller v. Webb*, 385 F.3d 666, 673 (6th Cir. 2004).

> The Supreme Court has upheld impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on voir dire. " *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001). Once a prospective juror makes a statement of partiality during voir dire, the trial court must examine the juror further. *Webb*, 385 F.3d at 674. The relevant question then becomes, "did [the] juror swear that [s]he could set aside any opinion [s]he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984).

*Burkholder v. Sheldon*, No. 3:14-cv-2080, 2016 WL 3661440, at *2 (N.D. Ohio July 1, 2016).

Further, a trial judge's finding that a particular venireperson was not biased "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province" and "involves credibility findings whose basis cannot be easily discerned from an appellate record." *Wainwright v. Witt*, 469 U.S. 412, 428-29 (1985) (footnote omitted). Therefore, "habeas courts must give 'special deference' to a trial court determination of juror credibility." *Lang v. Bobby*, No. 5:12-cv-2923, 2015 WL 1423490, at *43 (N.D. Ohio Mar. 27, 2015) (citing *Darden v. Wainwright*, 477 U.S. 168, 176-78 (1986); *Patton* v. *Yount*, 467 U.S. 1025, 1038 (1984)).

> Federal habeas courts accord "special deference" to state trial courts in applying these standards, because trial judges are in the best position to assess the demeanor and credibility of the jurors. *See, e.g., Darden v. Wainwright*, 477 U.S. 168, 175–78, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). "The question is not whether the trial judge was wrong or right in his determination of impartiality, but merely whether his decision was 'fairly supported by the

record.'" *Bowling v. Parker*, 344 F.3d 487, 519 (6th Cir. 2003) (quoting Witt, 469 U.S. at 433, 105 S.Ct. 844). A trial court's finding "may be upheld even in the absence of clear statements from the juror that he or she is impaired." *Uttecht,* 551 U.S. at 7, 127 S.Ct. 2218. And "when there is ambiguity in the prospective juror's statements, 'the trial court ... [is] entitled to resolve it in favor of the State.'"*Id*. (quoting *Witt*, 469 U.S. at 434, 105 S.Ct. 844).

*Group v. Robinson*, 158 F.Supp.3d 632, 661-62 (N.D. Ohio 2016). When reviewed under the constraints imposed by the AEDPA, this Court "must accord an additional and 'independent, high standard' of deference" or, in other words, conduct a "doubly deferential" standard of review. *White v. Wheeler*, 136 S. Ct. at 461 (citations omitted).

Petitioner asserts that Matthews failed to disclose that his sister had been murdered by the Petitioner's cousin, Travis Fischer. (ECF No. 1, PAGEID# 9.) However, Petitioner does not allege that Matthews had any personal bias or animosity against Petitioner on this basis, and the record does not establish any relationship between Petitioner and Fischer. Defense counsel did not attempt to verify the alleged familial tie:

> Q. [D]o you know if there was any relation between the murder victim . . . Abi Matthews [and] the person who committed the crime, Mr. Fischer, and Mr. Stevens?
>
> ***
>
> A. I don't have any personal knowledge . . . . I didn't independently attempt to research that in any way.

*Transcript* (ECF No. 8-7, PAGEID# 1190.) Matthews did not "at all" know the Petitioner. *Transcript* (ECF No. 8-7, PAGEID# 1206.)

> Q. Do you even know Timmy Stevens?
>
> A. No, sir.
>
> Q. He alleges at some point in time that maybe one of his brothers dated your sister. Do you have any recollection of that having occurred?

12

> A. That's not true.
>
> ***
>
> Q. Do you recall ever having any sort of contact with the Stevens family? By that I mean, Timmy Stevens, his brothers, he has one sister, or his mother?
>
> A. No, sir.
>
> Q. Do you have any recollection of having contact with them at all?
>
> A. No, sir.
>
> Q. Did you know him before this trial?
>
> A. No, sir.

(PAGEID# 1217-18.) Thus, the record does not indicate any bias on Matthews's part against Petitioner on this basis.

Petitioner, however, argues that the state appellate court's decision constituted an unreasonable determination of the facts in light of the evidence presented, because Matthews deliberately chose not to respond when defense counsel inquired as to whether anyone had a family member or friend who had been the victim of a violent offense, and stated that he thought criminals had too many rights and should be locked up:

> MR. MEYERS: Do you think criminals accused of crimes have too many rights?
>
> NOAH MATTHEWS: Yeah.
>
> MR. MEYERS: How do we correct that?
>
> NOAH MATTHEWS: Lock them up.

*Transcript* (ECF No. 8-3, PAGEID# 517.) However, Matthews agreed to follow the instructions of the trial judge regarding the prosecution's burden of proof beyond a reasonable doubt.

(PAGEID# 518.) Matthews also believed in the fairness of a criminal defendant's right to remain silent. (*Id.*)

Petitioner argues that Matthews's statements at Travis Fischer's November 2009 sentencing hearing (more than three and one half years earlier) also reflect Matthews's bias against the Petitioner.[2] Matthews stated as follows:

> Travis, what I truly want to say to you, I can't say it cause I'll get in trouble, but you want to know how bad you hurt everyone, when I passed Abi's house that morning where your car was sitting and I was going to stop, but I had my boys with me. If I'd have stopped, I would have felt sorry for you because I seen what my sister's face looked like and – (INAUDIBLE) – that's all I got to say. You don't know how bad you hurt this family.

*Transcript* (ECF No. 8-2, PAGEID# 431.) Petitioner refers to the trial court's admonition during *voir dire* proceedings regarding the importance of honest responses to questions from counsel in support of his claim. The trial court instructed the prospective jurors as follows:

> [A]s prospective jurors, you'll be questioned to determine your qualifications for this specific case.
>
> Our purpose here is to obtain a fair and impartial jury. And because of this being such an important part of the trial, you're required and have been sworn before questions are asked of you. Here in a moment I'm going to ask you some questions, and then the attorneys will ask you some questions, and I want you to understand that these questions are not designed to pry into your personal affairs, but they are to discover whether you have any knowledge about this case, or whether you have any preconceived opinions that you can't set aside, or whether you've had any experience in your life that might cause you to identify with either the State of Ohio or the defendant in this case.
>
> If any question needs to be answered in private, please indicate that to me and we will talk to you individually.

---

[2] On October 3, 2014, the trial court granted Petitioner's motion to supplement the record with the transcript of Fischer's sentencing hearing. (ECF No. 8-1, PAGEID# 168.)

*Transcript* (ECF No. 8-3, PAGEID# 462-63.) Petitioner argues that, despite these instructions from the trial court, Matthews indicated that he heard the question, *see Transcript* (ECF No. 8-7, PAGEID# 1206), but thought he did not need to respond.

> Q. But even though the question was asked. . . how about family and friends, who's had a person you would call, whether friend, family, now or formerly, good friend, that was a victim to a violent offense, you decided not to raise your hand?
>
> A. I guess.
>
> Q. You understood the question that was asked; is that correct?
>
> A. Yeah.
>
> Q. And you just decided not to answer it?
>
> A. Yeah.

*Transcript* (ECF No. 8-7, PAGEID# 1206.)

> Q. Do you know why you didn't answer the question?
>
> A. No. I think it was just where they were just asking anyone who wanted to answer it, answer it.
>
> Q. Okay. So you thought it was just voluntary, and you just didn't answer it?
>
> \*\*\*
>
> A. Yes, sir.

(PAGEID# 1213-14.) Petitioner further argues that the evidence reflects Matthews's bias against him, because Matthews stated that he hardly thought about his sister's murder.

> Q. [T]he death of your sister, how has that affected you, sir?
>
> A. Oh, it's – I mean, I still think about it but I mean, you got to move on in life.

(PAGEID# 1214.) In sum, Petitioner asserts that Matthews's intentional concealment of information deprived him of a fair trial, because it shows that Matthews was biased against him, and Petitioner had the right to know about the murder of Matthews's sister at least so that he could consider that information in exercising his preemptory challenges.

However, Matthews denied that he was trying to conceal the fact that his sister was murdered:

> Q. Were you trying to conceal the fact that your sister was murdered?
>
> A. No.

(PAGEID# 1216.) Matthews also denied being biased:

> Q. Is there any particular reason why you didn't speak up?
>
> A. I'm not – I'm not biased. I mean, what happened in the past, happened in the past.

(PAGEID# 1206.)

> Q. Did the fact that your sister was murdered in any way affect your thought process as you sat there . . . as a juror in this trial and ultimately were called upon to make a decision?
>
> A. No, sir.
>
> Q. Did you sit in the jury room and think about, well, what would have happened in Abi's case or anything like that?
>
> A. No.
>
> Q. Did that at any time enter your thought process whatsoever?
>
> A. No.
>
> Q. Do you harbor – did you harbor at that time or now any bias against the defendant, Timothy Stevens?
>
> A. No, sir.

(PAGEID# 1216-17.)

> Q. Did you have any preconceived notion of how the trial should turn out prior to being seated as a juror?
>
> A. No, sir.
>
> Q. When the judge instructed you that you were to keep an open mind and not form an opinion or discuss the matter prior to the. . . case being submitted to you for deliberation, did you understand that instruction?
>
> A. Yes, sir.
>
> Q. Did you comply with or follow that instruction?
>
> A. Yes, sir.
>
> ***
>
> Q. If the state failed to prove the case against Timmy would [you] have had any problem voting not guilty?
>
> A. No, sir.

(PAGEID# 1218-19.)

Upon review of the record, and under the deferential standard of review, this Court is not persuaded that Petitioner has established that he is entitled to relief. Matthews denied being biased against the Petitioner and agreed that he would follow the instructions of the trial judge. He explained that he did not respond to defense counsel's question regarding whether he had a family member who had been the victim of a violent crime because he did not think that he was required to do so. He denied attempting to conceal that his sister had been murdered and could not have likely done so, as the same prosecutor had been involved in both cases. Further, as noted by the state appellate court, the trial judge was in the best position to judge the credibility of Matthews, and determined that there existed no basis for a cause challenge against Matthews and that any nondisclosure of material information by Matthews did not prejudice the Petitioner

17

in any manner. (ECF No. 8-1, PAGEID# 143.) Petitioner's argument that he could have exercised a peremptory challenge against Matthews, had Matthews disclosed his sister's murder, does not assist him. "[I]t is well settled that the loss of a peremptory challenge does not violate a defendant's constitutional right to an impartial jury because 'peremptory challenges are not of constitutional dimension.'" *Beuke v. Houk*, 537 F.3d 618, 638 (6th Cir. 2008) (citing *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (citing *Gray v. Mississippi*, 481 U.S. 648, 663 (1987)); *United States v. Martinez–Salazar*, 528 U.S. 304, 311 (2000)), *cert. denied*, 557 U.S. 906 (2009).

The undersigned notes that, even if a juror does not display actual bias, courts may find implied bias in certain "extreme situations." *See Smith*, 455 U.S. at 221-23 (J. O'Connor, concurring) ("Because there may be circumstances in which a postconviction hearing will not be adequate to remedy a charge of juror bias, it is important for the Court to retain the doctrine of implied bias to preserve Sixth Amendment rights. I read the Court's opinion as not foreclosing the use of implied bias in appropriate situations . . . ."). Examples of "extreme situations" include when the juror is an employee of the prosecutor, a close relative of a party, or somehow connected to the events of the case. *Id.* at 222. However, the Sixth Circuit has questioned whether the doctrine of implied bias exists after *Phillips*. *Johnson*, 425 F.3d at 326 ("[T]he implied-bias doctrine may not even be viable after [*Phillips*]"). *See also United States v. Herndon*, 230 F.3d 1360 (6th Cir. 2000) ("The majority [in *Phillips*] does not specifically say, one way or the other, whether there are any situations in which they would presume prejudice."). Other circuits, however, have acknowledged the doctrine's continuing applicability post-*Phillips*, finding implied bias in varied situations. *See*, *e.g*., *Urgana v. Davis*, 879 F.3d 646, 652-53 (5th Cir. 2018) (finding implied bias when a juror's property was damaged by the defendant); *Hunley v. Godinez*, 975 F.2d 316 (7th Cir. 1992) (affirming the district court's application of the doctrine

18

of implied bias where several jurors were victims of a burglary during a burglary trial); *Burton v. Johnson*, 948 F.2d 1150, 1158-59 (10th Cir. 1991) (finding implied bias where jurors in a case involving domestic abuse had personal experiences with abuse). *See also Dyers v. Calderon*, 151 F.3d 970, 985 (9th Cir. 1998) (noting that nothing in *Phillips* directly abolishes the doctrine of implied bias). Even though other courts have continued to apply the doctrine of implied bias post-*Phillips*, courts in the Sixth Circuit have not. Accordingly, the undersigned declines to find implied bias in this case.

**Recommended Disposition**

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of

19

the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*\_\_\_
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE